**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

FAULKNER LITERARY RIGHTS, LLC                                          PLAINTIFF

V.                                                     NO. 3:12-cv-00100-M-V

SONY PICTURES CLASSICS, INC., and
JOHN DOE PERSONS OR ENTITIES 1-100                        DEFENDANTS

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS RESPONSE
TO DEFENDANT'S MOTION TO TRANSFER VENUE**

      Plaintiff Faulkner Literary Rights, LLC ("Faulkner") brought this action alleging that Defendant Sony Pictures Classics, Inc. ("Sony") distributed a film containing an unauthorized use of copyrighted material from a work by William Faulkner. Sony now seeks a convenience transfer to the Southern District of New York under 28 U.S.C. §1404(a). Sony's Motion is based primarily on its assertion that "virtually all of its employees, books and records, and likely witnesses are in or around New York City." Venue is proper in this District, and Sony has not presented sufficient proof to justify a transfer. Faulkner respectfully asks the Court to deny Sony's Motion.

**STANDARD FOR TRANSFER**

      Section 1404(a) provides in pertinent part that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …." A party seeking a transfer under this section must show "good cause" for the transfer sought, and, "when the transferee venue is not ***clearly more convenient*** than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen AG*, 545 F.3d 304 (5th Cir. 2008) ("*Volkswagon II*") (emphasis added). Sony has not claimed that venue is improper in this District, and, while a plaintiff's

choice of venue is not determinative, it is a factor weighing against transfer. *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

The threshold question is whether this action could have been brought in the Southern District of New York. *Id*. at 312. Sony argues that venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the New York State courts have personal jurisdiction over it. Brief, at 4. Faulkner agrees that this action could have been brought in Southern District of New York because Sony "may be found" in that District under the copyright venue statute, 28 U.S.C. § 1400(a).

Sony correctly states the factors to be considered by the Court in determining whether a §1404(a) convenience transfer is appropriate:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Volkswagen II*, 545 F.3d 304, 315 (internal citations omitted). Sony also identifies a recent §1404(a) decision in which this Court undertook an exhaustive examination of these factors and concluded that a transfer was appropriate. *See Surfer Internet Broad. of Miss., LLC v. XM Satellite Radio Inc.*, No. 4:07-cv-034, 2008 WL 1868426 (N.D. Miss. Apr. 24, 2008). However, Sony has failed to present the types of evidence cited by the Court in *Surfer Internet*.

**PRIVATE CONCERNS**

*The Relative Ease of Access to Sources of Proof*

In its Brief, Sony claims that it "has its offices, employees, and primary operations in New York City", that it "has copies of all relevant business records in New York City", and that its "employees are almost entirely in New York City, as are the production companies for the Firm and its writer and director." Brief, at 5-6. In the affidavit offered in support of Sony's Motion, Diane Buck testifies that Sony's "primary personnel and operations are all based in or around New York City, and it maintains copies of all major corporate documents at its offices in New York City. Buck Affidavit, at ¶ 2. Ms. Buck also testifies that "[a]ll of the Sony Classics personnel involved in th[e] acquisition and distribution [of the film in question] are based in New York City." *Id*., at ¶ 3. Ms. Buck further testifies, apparently based on hearsay, that she is "informed and believe[s] that the primary production companies for the film – Perdido Productions and Gravier Productions, respectively – including the writer and director of the film, are based in New York City." *Id*. at 5. Sony's assertions are both questionable and insufficient to justify a §1404(a) convenience transfer.

First, it is not at all clear that Sony is headquartered "almost entirely" in New York. Sony's assertions as to its principal place of business are contradicted by the publicly-available information it has provided to the departments of state in its state of incorporation (Delaware), its purported principal place of business (New York), and its apparent actual principal place of business (California). Sony's corporate filings in all three of these states list its principal place of business as Culver City, California. *See* Ex. "A" (Sony 2011 Annual Report – Delaware); Ex. "B" (Sony Entity Information – New York State); Ex. "C" (Sony Entity Detail – California).

Additionally, Sony has instructed the New York Department of State to forward process accepted on Sony's behalf to the same address in California. *See* Ex. "B".

Ms. Buck, Sony's Vice President for Business Affairs and the only Sony employee identified by name, executed her affidavit in Los Angeles, California. Buck Affidavit, at p. 2. The film's DVD cover lists Sony's address as 100202 W. Washington Blvd., Culver City, California 90232-3195, the same address listed in the various corporate filings referenced above. *See* Ex. "D" (DVD cover). Contrary to Ms. Buck's hearsay testimony, the DVD cover lists the film's production companies as Gravier Productions, Inc., Mediaproduccion S.L.U. (sometimes shortened to "MediaPro"), and Versatil Cinema S.L. *Id*. According to their listings on IMDbPro.com, MediaPro and Versatil are Spanish companies based in Madrid and Barcelona, respectively. *See* Ex. "E" (IMDbPro pages). Perdido Productions, identified in the Buck affidavit as a "primary production company" for the film, is not mentioned on the film's DVD cover. Perdido's IMDbPro page, unlike those for Gravier, MediaPro, and Versatil, claims no involvement with the film. *Id*.

Furthermore, the film's credits state that a Los Angeles partner in the Loeb & Loeb firm (defense counsel in this litigation) provided legal counsel to Sony, presumably for purposes of advising on copyright and related issues. See Ex. "F" (film credits); www.imdb.com/title/tt1605783/fullcredits#cast. In this copyright case, discovery related to advice of counsel could bear on the question of whether Sony's use of Faulkner's copyrighted work was in good faith. *See* Faulkner's Brf. in Rsp. to Mot. to Dismiss, at 16. The information available to Faulkner at this time indicates that Sony's primary place of business is not in the Southern District of New York. Aside from Ms. Buck's conclusory affidavit, Sony has presented no substantive proof to the contrary.

Sony has also made no attempt to "specifically relate the identity of the witnesses and the nature and relative importance of their testimony." *Surfer Internet*, 2008 WL 1868426, at *2 (*quoting Crawford v. Glenns, Inc.*, 637 F. Supp. 107, 110 (N.D. Miss.1986)); *see also Mississippi Chem. Corp. v. Terra Int'l, Inc.*, 5:95-CV-127, 1996 WL 293764 (S.D. Miss. Jan. 31, 1996) ("The party seeking transfer must name these witnesses with specificity and relate the nature and relative importance of their testimony."); 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 3851 (3d ed.) ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the application for transferring the case should be denied ….").

In *Surfer Internet*, this Court noted that the defendants had identified three key witnesses with particularized knowledge about the design and operation of the products at issue in that lawsuit. *Id*. Sony identifies no particular employee, and it does not explain the importance of the testimony to be offered by these unknown witnesses. Ms. Buck's affidavit merely refers to "primary personnel" and "personnel involved in the acquisition and distribution of" the film. The fact that Sony acquired and distributed the film appears to be undisputed. *See* Def.'s Brf., at 1 [Doc. No. 15] ("In 2011 Sony Classics distributed the motion picture *Midnight in Paris*, written and directed by Woody Allen."); Compl., at ¶ 7 [Doc. No. 1] ("In 2011, Sony began distributing and marketing a motion picture entitled 'Midnight in Paris' ('the Infringing Film'), written and directed by Woody Allen."); Def.'s Mot. to Dismiss Brf., at 1 [Doc. No. 14] ("In 2011 Sony Classics distributed the motion picture *Midnight in Paris*, written and directed by

Woody Allen."). Sony's conclusory assertions do not establish that the Southern District of New York would be a "*clearly more convenient*" forum for this matter.

The only living person named in Sony's papers (with the exception of Ms. Buck herself) is Woody Allen, the film's writer and director. Mr. Allen is not a party to this action, and he may or may not be a witness. Sony has made no attempt to relate the nature or importance of any testimony to be offered by Mr. Allen.

Faulker expects that Lee Caplin, its authorized representative and agent, could be called as a witness to testify as to Faulkner's interest in the copyright in question, the nature of Faulkner's claims, and Mr. Caplin's pre-suit attempts to secure Sony's voluntary withdrawal of the infringing material. Because of his association with Faukner, which has a close connection with Oxford, Mississippi, Mr. Caplin spends a good deal of time in this area. *See* Ex. "G" (Caplin declaration).

Sony has also failed to identify any particular documentary or other evidence that it maintains within the Southern District of New York. Ms. Buck testifies that "copies of all major corporate documents" are kept at Sony's New York office, but Sony provides no explanation of what constitutes a "major corporate document," fails to identify the location of the original documents, and avoids explaining how any such document is to relevant to this case. Sony does not identify any other location where it maintains copies of its records or explain why the copies in New York are more accessible than the originals or copies maintained elsewhere. The Fifth Circuit has held that the fact that "access to some sources of proof presents a lesser inconvenience now than it might have absent recent [technological] developments does not render this factor superfluous." *Volkswagon II*, 545 F.3d at 316. However, Sony has identified no "documents [or] physical evidence" located in New York that would create an inconvenience.

6

*See Jones v. TEPPCO Terminaling & Marketing Co.*, No.4:11–CV–27, 2011 WL 8198697, at *4 (S.D. Miss. Dec. 22, 2011) (holding that, in order for this factor to weigh in favor of transfer, "the movant must identify sources of proof with enough specificity for the Court to determine whether transfer will increase convenience"). This factor weighs against a transfer.

*The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Sony presented no proof related to this factor. While it is likely true that this Court would lack the power to subpoena Mr. Allen if he were called as a witness at trial, Sony has not identified any testimony he might give or presented any proof that he is unwilling or unable to appear in this District. If any such testimony is required, Mr. Allen can be subpoenaed in New York for a deposition to be used at trial. By contrast, Mr. Caplin (though he has indicated his willingness to attend proceedings as needed) is often personally present in this District and subject to the Court's subpoena power. *See* Ex. "G" (Caplin declaration). This factor weighs against transfer.

*The Cost of Attendance for Willing Witnesses*

Sony has presented no evidence related to this factor. In fact, the sparse information available about Sony suggests that many of its operations are actually based in California. If discovery material and witnesses were spread between New York and California (though Sony has offered no substantive proof of either), this District could be seen as a relatively convenient midpoint that could avoid the need for cross-country trips for witnesses located on the East and West Coasts.

On the other hand, the cost for Mr. Caplin to attend any proceeding related to this matter would be minimal, as he is regularly in this area and is able and willing to attend any proceeding with reasonable notice. *See* Ex. "G" (Caplin declaration). This factor weighs against transfer.

*All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive*

Sony has identified no such practical problems. Faulkner is aware of no practical problems that would prevent this case from being resolved expeditiously. This factor does not weigh in favor of transfer.

### PUBLIC CONCERNS

*The Administrative Difficulties Flowing from Court Congestion*

Sony has identified no such difficulties. However, according to the latest Federal Court Management Statistics, the median time from filing to trial in this District was 28.7 months for the 12-month period ending September 30, 2012. The same statistic in the Southern District of New York for the same time period was 27.2 months. *See* Ex. "H" (Judicial Caseload Profile). In *Surfer Internet*, this Court held that a difference of 1.7 months between the same two courts (24 months in this Court and 25.7 months in the Southern District of New York) did not favor one venue over another. *Surfer Internet*, 2008 WL 1868426, at *3. This factor does not weigh in favor of transfer.

*The Local Interest in Having Localized Interests Decided at Home*

Except for asserting that the film's writer and director reside in New York, Sony has presented no proof on this factor. By contrast, this District has a long-standing vested interest in William Faulkner's works. Mr. Faulkner resided in Oxford, Mississippi, at the time he wrote and obtained the copyright for *Requiem for a Nun*. *See* The Mississippi Writers Page, *William Faulkner*, *available at* http://www.olemiss.edu/mwp/dir/faulkner_william/index.html. This District has a local interest in this matter, and jury duty would not be an undue burden upon the people in this community. *See Surfer Internet*, 2008 WL 1868426, at *3. This factor weighs against transfer.

8

*The Familiarity of the Forum with the Law that Will Govern the Case*

Sony does not argue that this Court is not sufficiently familiar with any source of law raised in Faulkner's pleadings. Faulkner's Complaint raises issues of federal law, but it also asserts that Sony committed a tort in Mississippi, under Mississippi law. *See* Compl., at ¶¶ 25-29. While the U.S. District Court of the Southern District of New York is certainly familiar with federal copyright law, this Court is undisputedly more familiar with Mississippi law. This factor weighs against transfer.

*Avoidance of Unnecessary Problems of Conflict of Laws of the Application of Foreign Law*

Sony has identified no such problems. This factor does not weigh in favor of transfer.

## CONCLUSION

Sony has offered nothing more than vague, conclusory assertions in support of its Motion. It has fallen well short of meeting its burden to prove that the Southern District of New York is a "clearly more convenient" venue for this lawsuit. This Court has jurisdiction and venue over this matter because Sony distributed its infringing film within this District. Presumably, it did the same in every judicial District in the country. If the Court accepts Sony's argument and finds that it has presented sufficient evidence that the Southern District of New York is "clearly more convenient," then Sony could claim that it must always be sued where it claims to keep "copies" of some records. Section 1404 does not so severely restrict a plaintiff's choice of forum that such choice can be disregarded merely because a defendant maintains "copies" of some of its records in another forum. This Court should deny Sony's Motion and retain this matter. Faulkner respectfully requests such other relief as the Court deems appropriate.

THIS, the 22nd day of January, 2013.

>Respectfully submitted,
>
>FAULKNER LITERARY RIGHTS, LLC
>
> *Paul B. Watkins, Jr.*
>J. CAL MAYO, JR. (MB NO. 8492)
>POPE S. MALLETTE (MB NO. 9836)
>PAUL B. WATKINS, JR. (MB NO. 102348)
>ITS ATTORNEYS

OF COUNSEL:

MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Tel: (662) 236-0055
Fax: (662) 236-0035

**CERTIFICATE OF SERVICE**

  I, Paul B. Watkins, Jr., one of the attorneys for Plaintiff, do certify that I have electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent notification of such filing to all attorneys of record.

  THIS, the 22nd day of January, 2013.

                  *Paul B. Watkins, Jr.*_____
                  PAUL B. WATKINS, JR.